[Civ. No. 1761.    First Appellate District.—July 10, 1916.]

## E. WILLIAMS, Respondent, v. PARROTT & COMPANY (a Corporation), Appellant.

CONTRACT—SALE OF PORTION OF SALMON PACK ON COMMISSION—SUBSEQUENT NEGOTIATIONS FOR HANDLING OF ENTIRE PACK—EFFECT OF TERMINATION OF NEGOTIATIONS.—An optional agreement entered into between a corporation engaged in the business of packing salmon and a brokerage corporation, whereby the former agreed to deliver to the latter five thousand one hundred cases of certain kinds of canned salmon of the pack of the year 1909, to be sold by the latter at what is conventionally termed the opening price for the pack of that year, thereafter and before delivery to be named, and to be communicated by the former to the latter, and to be by the latter confirmed and assented to within five days after such communication, the latter to receive a brokerage of five per cent upon its sales, is not canceled by negotiations entered into in the early part of the year following the date of the agreement for the handling of the whole pack of the year, amounting to some fifty thousand cases, and the subsequent writing of a letter, referring to the letters by dates containing the proposition as to the handling of the entire pack, and declining the business, as such optional agreement and the subsequent negotiations were separate contracts, and the refusal to make delivery of the cases called for by such agreement constituted a breach of contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. John L. Childs, Judge presiding.

The facts are stated in the opinion of the court.

J. Early Craig, for Appellant.

Chickering & Gregory, for Respondent.

KERRIGAN, J.—This is an appeal from the judgment and from an order denying the defendant's motion for a new trial.

The action was brought by plaintiff for sums alleged to be due from the defendant to the assignor of plaintiff, the Apex Fish Company, for a consignment of canned salmon which defendant had sold for the account of said fish company, which was a corporation engaged in the business of packing salmon having its principal place of business in the state of Washington. Defendant in its answer admitted itself to be accountable for the moneys received from the transaction set forth in plaintiff's complaint, but set up a counterclaim for $1,034, and denied liability for anything in excess of the difference between that sum and plaintiff's demand, and which difference it paid.

The facts of the case were stipulated to except when consisting of letters, which were introduced in evidence.

The counterclaim was based on the following facts: On October 7, 1908, the Apex Fish Company entered into an optional agreement with defendant, whereby the former agreed to deliver to the defendant five thousand one hundred cases of certain kinds of canned salmon of the pack of the year 1909, to be sold by the defendant at what is conventionally termed the opening price for the pack of that year, thereafter and before delivery to be named, and to be communicated by the fish company to the defendant, and to be by the defendant confirmed and assented to within five days after the same had been communicated to it. Defendant was to receive a brokerage of five per cent upon its sales of the five thousand one hundred cases.

Thereafter, in the month of December, 1908, the defendant entered into six optional contracts with different persons for the sale of these goods, subject to approval of opening price of the year 1909 when named. The "opening price" was annually fixed by certain large packers in the early fall, and it was the custom of packers to notify those holding contracts

for salmon of the naming of the opening price. The six contracts referred to were accepted by the Apex Fish Company.

In the early part of the year 1909 the company entered into negotiations with the defendant for the handling by the latter of the whole of its 1909 pack of salmon, amounting to some fifty thousand cases. These negotiations were terminated on May 12, 1909, when the defendant wrote the Apex Fish Company a letter, in which it stated, referring to the company's offer to allow the defendant to handle its entire pack for 1909, that after duly considering the matter "we have concluded that it is best to decline the business, which we do, thanking you for your offer and the courtesies extended." Subsequent to the writing of this letter the opening price was named. The fish company gave to the defendant no notice thereof, but immediately upon learning of it the defendant telegraphed to its representative, who was then in Washington, to confirm to the Apex Fish Company the opening price on its behalf. Its representative did so, and requested delivery of the five thousand one hundred cases agreed to be delivered under the contract of October 7, 1908. The fish company refused to make the delivery, taking the position that the contract was canceled by the fact of the negotiations for the entire pack of 1909 and their termination in the spring of that year. This was the view adopted by the trial court, which rendered its judgment accordingly in favor of the plaintiff in the sum of $1,034, with interest and costs.

We are of the opinion that the contention of the defendant must be sustained that the contract of October 7, 1908, between the Apex Fish Company and the defendant, and the subsequent negotiations relative to the entire pack of salmon for the year 1909, were separate transactions, and that the letter of May 12, 1909, written by the defendant, declining the business, referring as it did to the letters by dates containing the proposition, had reference to the latter negotiations alone, and did not operate as a cancellation of the earlier contract. Accordingly it must be considered that the refusal of the Apex Fish Company to deliver the five thousand one hundred cases of salmon when defendant confirmed the opening price constituted a breach of contract, for which the defendant is entitled to recover, and that the conclusion

reached by the court that the contract of October 7, 1908, was canceled in May, 1909, is not supported by the evidence, and that its judgment based on such conclusion cannot stand.

The judgment and order are reversed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1916.